Mrs. Leone Lewis Taylor, wife of the plaintiff, was killed in a collision between his automobile and a loaded truck of Raymond Johnson, the afternoon of December 12, 1947, on State Highway No. 477, about four miles east of the Village of Downsville, in Union Parish, Louisiana. The truck was owned by Johnson and was being driven by him at the time of the accident. The Taylor car, at the time, was being driven by the deceased.
Laval F. Taylor, surviving husband, individually and as natural tutor of his three minor children, issue of his marriage to the decedent, to wit: Jo Beth, Scott and Carla Anne, instituted this suit against Johnson and his alleged employer, the Bass-Boyd Lumber Company, a commercial copartnership, and the individual members thereof, to recover a large amount in damages because of the death of the wife and mother, allegedly due to the negligence of Johnson in the operation of the truck.
Several exceptions and pleas were filed by the defendants, all of which were either overruled or referred to the merits, excepting an exception of no right of action, which was tried. Evidence was adduced by both sides. This exception is buttressed upon the contention and position that Johnson was not the agent nor employee of the copartnership, nor acting for it in any capacity whatever when the collision occurred, and therefore, the invoked doctrine of respondeat superior has no application. It is their contention that the relationship between Johnson and the partnership was that of seller and purchaser. The exception was sustained and the suit dismissed as to the partnership and its individual members.
Plaintiff prosecutes appeal.
The partnership depended upon truck owners or loggers for a supply of logs to operate its mill. It owned no logging equipment. When it began business in December, 1946, Johnson, who had been engaged in the logging business for many years, was informed by Mr. S. J. Bass, the mill's general manager, that he would buy from him all the good saw logs he could deliver to the mill site; and from that time on Johnson delivered to the lumber company logs acceptable to it.
The loggers, we infer, especially Johnson, were not financially able to buy outright tracts of timber. In order to acquire timber for his operations Johnson would locate a tract of it and reach an agreement with the owner as to the price to be paid therefor, conditioned upon the timber being of a grade acceptable to Mr. Bass. He would agree with such owner that in order for him to feel secure in getting the stumpage price it would be paid directly to the owner by the lumber company when and as the delivered logs were scaled by it. Johnson, after such agreement, would then report to Mr. Bass the location and the owner of the timber so he could inspect it and determine if it was of the grade and character desired by him. If Bass was satisfied with the quality of the timber he would then so advise Johnson who would forthwith proceed with the cutting and hauling of it. We think this course was followed in the case of the timber of J. L. Day which was being hauled at the time of the accident. Johnson and Bass say this is true. Day says it is not true. He admits, however, that he and Johnson discussed the timber to some extent but adds that the terms of a sale of it were not mentioned between them at that time. Under the circumstances, that would have indeed been quite singular. Day testified that when Mr. Bass came to his place and gave the timber a casual inspection, they, then and there, reached an agreement concerning the sale of the timber, the price and the payment thereof. *Page 477 
Bass positively denies this. He says that the only reason he went to Day's place was to satisfy himself as to the grade of the timber. He testified that it was his understanding at the time that Johnson had previously made the necessary arrangements with Day to cut and haul the timber to the mill. The preponderance of the testimony supports defendants' contention that the timber was contracted for by Johnson and not Bass.
As a matter of fact, the title to the timber did not pass until cut. The title remained in Day until the trees were converted into saw logs and not until then had he the right to demand from any one payment of the price of stumpage.
It is of some significance that all of the checks that issued to Day by the lumber company in payment of stumpage price carried this notation, to wit: "For acc't. of Raymond Johnson". Had Bass made the arrangements with Day for the acquisition of the timber, it is unlikely that this notation would have been on the checks. Johnson was paid by the partnership $32.50 per one thousand feet, log scale, for all logs delivered by him to and accepted by the mill company, from which amount $17.50 per thousand feet was paid to Day as the stumpage price.
Whether Bass or Johnson arranged with Day to cut the timber plaintiff believes of some importance in the case. He argues that as Bass made said arrangements with Day it would naturally follow that he engaged (or employed) Johnson to cut and haul the logs. This would not necessarily follow. It is entirely possible that in the cutting of the timber and hauling the logs Johnson could have been an independent contractor. As said above, Johnson had been engaged in the business of buying timber, cutting and delivering logs to saw mills for many years. He owned three trucks at the time of the accident and was driving one of them, loaded with logs, from the Day timber when the collision occurred. He was under no financial obligation whatsoever to the defendants. He provided fuel to operate the trucks, hired his own employees, fixed and paid their wages and discharged them at will. He was under no legal obligation to deliver these logs to defendants' mill. In cutting and hauling the logs, surely Johnson was his own master. No one representing the partnership had color of right to supervise, control or interfere with the mode and method of operation, nor had the partnership, its members, officers or agents the right so do to. From the time Bass inspected the timber until the logs were delivered on the company's skidway, no one connected with it saw the timber or logs.
We are clear in the opinion that Johnson in delivering the logs to the partnership was not acting in the capacity of an employee. Whether their relationship was that of a seller and buyer or principal and independent contractor, it is not necessary to decide.
Today this Court rendered judgment in the case of Hanchey v. Consolidated Underwriters of Kansas City, Missouri, La. App.,43 So.2d 487, wherein the same legal principles involved in the instant case are discussed and pertinent authorities cited and quoted from. They are all also applicable to the present case.
For the reasons hereinabove assigned, the judgment from which appealed, is affirmed with costs.
KENNON, J., dissents, giving written reasons.